1  JAMES POOLEY  #058041
   L. SCOTT OLIVER  #174824
2  DIANA LUO #233712
   KATHERINE NOLAN-STEVAUX # 244950
3  MORRISON & FOERSTER LLP
   755 Page Mill Road
4  Palo Alto, CA  94304-1018
   Telephone:    (650) 813-5600
5  Facsimile:    (650) 494-0792
   jpooley@mofo.com
6  soliver@ mofo.com
   dluo@mofo.com
7  knolanstevaux@mofo.com

8  Attorneys for Plaintiff
   OPTOVUE CORPORATION

9

10                 UNITED STATES DISTRICT COURT

11               NORTHERN DISTRICT OF CALIFORNIA

12                      SAN JOSE DIVISION

   OPTOVUE CORPORATION, a California          Case No.   C07  03010  MEJ
13 Corporation,
                                             COMPLAINT FOR 1) DECLARATORY
14              Plaintiff,                    JUDGMENT OF
                                             A) NO VIOLATION OF COMPUTER
15      v.                                   FRAUD AND ABUSE ACT;
                                             B) NO UNFAIR COMPETITION UNDER
16 CARL ZEISS MEDITEC, INC., a New York      LANHAM ACT;
   Corporation,                              C) NO INFRINGEMENT UNDER
17                                           COPYRIGHT ACT;
                Defendant.                   D) NO UNFAIR COMPETITION UNDER
18                                           CALIFORNIA STATE LAW;
                                             E) NO TRADE SECRET
19                                           MISAPPROPRIATION;
                                             F) PLAINTIFF'S RIGHT TO CONTINUE
20                                           EMPLOYMENT OF EMPLOYEE; AND
                                             FOR 2) TRADE SECRET
21                                           MISAPPROPRIATION BY
                                             DEFENDANT;
22                                           DEMAND FOR JURY TRIAL

23

24

25                               I.

26                      NATURE OF THE ACTION

27     1.    This is a civil action arising under the 1) Computer Fraud and Abuse Act,

28 Title 18 U.S.C. § 1030, for a declaratory judgment pursuant to Title 28 U.S.C. § 2201 of

no unlawful access to defendant's computers; 2) Lanham Act, Title 15 U.S.C. § 1125  for

a declaratory judgment pursuant to Title 28 U.S.C. § 2201 of no false, deceptive or

misleading marketing statements; 3) Copyright Act, Title 17 U.S.C. § 101, *et seq.*, for a

declaratory judgment pursuant to Title 28 U.S.C. § 2201 of noninfringement of

copyright; 4) various California state laws for a declaratory judgment that Optovue

Corporation ("Optovue") has not engaged in any unfair competition under Cal. Bus. &

Prof. Code § 17200, has not misappropriated any Carl Zeiss Meditec, Inc. ("CZM") trade

secrets, and has the right to continue to employ William Shields; and 5) for remedies for

trade secret misappropriation by CZM.

## II.

## JURISDICTION AND VENUE

2.      Claims I through III arise under United States statutes (Titles 18 U.S.C.

§ 1030, 15 U.S.C. § 1125, 17 U.S.C. §101, *et seq.*).  This Court has jurisdiction pursuant

to Title 28 U.S.C. §§ 1338(a), 1338(b), and 2201.  Claims IV through VII arise under the

laws of the State of California.  This Court has supplemental jurisdiction pursuant to

Title 28 U.S.C. § 1367(a).

3.      Venue is established in this judicial district pursuant to Title 28 U.S.C.

§§ 1391(b) and 1400(b).

## III.

## INTRADISTRCT ASSIGNMENT

4.      Pursuant to Civil Local Rule 3-2(d), a substantial part of the events or

omissions which give rise to the claims occurred in Fremont, California.  Because this is

a declaratory judgment action for noninfringement of copyright, the case may be

assigned on a district-wide basis, pursuant to Civil L. R. 3-2(c).

## IV.

## THE PARTIES

5.      Optovue Corporation is a California corporation having its principal place

of business in Fremont, California.

-2-      OPTOVUE'S COMPLAINT FOR DECLARATORY JUDGMENT;
DEMAND FOR JURY TRIAL

1      6.     On information and belief, Carl Zeiss Meditec, Inc. is a New York

2  corporation with its principal place of business in Dublin, California. Also on

3  information and belief, CZM is a subsidiary of Carl Zeiss Meditec AG.

4                                 **IV.**

5                   **GENERAL ALLEGATIONS**

6      7.     Optovue is an ophthalmic device company that works with

7  ophthalmologists and clinical researchers to develop and commercialize new imaging

8  modalities for the diagnosis and treatment of eye diseases.

9      8.     Optovue was founded and advised by several of the pioneers in Optical

10  Coherence Tomography ("OCT") and has developed next-generation ophthalmic

11  diagnosis tools based on Fourier-Domain OCT ("FD-OCT") technology. FD-OCT

12  machines provide physicians with advanced retina diagnostic capabilities at extremely

13  high speeds and extremely high resolution. These tools have major benefits for patients

14  with retina conditions such as macular degeneration, diabetic retinopathy, glaucoma, and

15  other macular diseases.

16      9.     Since November 2006, Optovue has been selling the "RTVue," its FD-

17  OCT system.

18      10.    Optovue and CZM both sell ophthalmic diagnosis tools. On information

19  and belief, CZM's Stratus OCT machine competes with Optovue's RTVue. On

20  information and belief, CZM sells its ophthalmic diagnosis tools in this district.

21      11.    Some of Optovue's current employees and some of Optovue's founders

22  and employees were once employed by CZM.

23      12.    Beginning in late 2006, and apparently in an effort to suppress

24  competition in the OCT market, CZM began threatening legal action against Optovue,

25  alleging unfair competition, copyright infringement, and trade secret misappropriation,

26  as well as implying conduct, which if it occurred, could be claimed as improper access to

27  CZM computers.

28

## Optovue's Marketing Statements Are Not False, Misleading or Deceptive Under the Lanham Act

13.    On April 11, 2007, CZM notified Optovue that Optovue's marketing material for its FD-OCT system containing the phrase "developers of the first OCT system in eye care" is "false" and "deceptive." Ex. A.  On May 24, 2007, CZM alleged that the phrase is "misleading and deceptive."  Ex. B.

14.    Mr. Wei of Optovue is the developer of the first OCT eye care system. Optovue's statement is a reflection of a fact, and is not false, misleading or deceptive.

## CZM Makes Spurious Allegations of Copyright Infringement

15.    On May 24, 2007, CZM notified that Optovue that Optovue infringed certain CZM copyrights with respect to marketing materials.  Ex. B.

16.    On information and belief, CZM's marketing collateral is not copyrightable material under 17 U.S.C. § 101.

17.    On information and belief, Optovue's marketing collateral does not infringe any valid CZM copyright.

## Optovue Has Developed and Maintained Its Own Valuable Trade Secrets

18.    Optovue has expended significant time and expense developing its confidential, proprietary and trade secret information and products (including both current and planned future products), and in developing and servicing its clients and growing its business.  This information is referred to herein as the Trade Secrets.

19.    Optovue's Trade Secrets include but are not limited to product sourcing, development, future product plans, marketing, and advertising plans and strategies, finances—including costs of business and current and future profits—opportunities for future growth and development, and information about employees, including personnel files and information, and other proprietary and confidential information belonging to Optovue concerning its business.

pa-1172783

20.    The Optovue Trade Secrets are not generally known among Optovue's competitors, were developed at considerable expense, and provide Optovue with a significant competitive advantage.

21.    The Optovue Trade Secrets are maintained in confidence at Optovue by limiting access to the Trade Secrets to those employees with a need to know such information. Optovue also requires all employees and third parties with access to sign agreements agreeing that they will not divulge the Optovue Trade Secrets and will keep them in confidence.

22.    Professor David Huang of the Doheny Eye Institute in Southern California is a member of Optovue's Scientific Advisory Board and has consulted with Optovue. On information and belief, Dr. Huang has also consulted for CZM, and his lab uses both companies' products—as well as products from other companies—in its research.

23.    On information and belief, Dr. Huang conducted studies on a CZM prototype OCT device in his laboratory, and Dr. Huang also had access to certain of the Optovue Trade Secrets, under a nondisclosure agreement with Optovue.

24.    CZM alleges that Optovue had access to computer files on the CZM prototype in Dr. Huang's lab. Optovue denies this allegation.

25.    On information and belief, the value of the computer associated with the CZM prototype at Dr. Huang's laboratory, and any files on that computer exceeds $5,000. OCT systems cost approximately $10,000-$60,000.

26.    On information and belief, Dr. Huang has returned to CZM all of its confidential information, and CZM computers that Dr. Huang had been testing, and before doing so, deleted from such computer the Optovue Trade Secrets he had been working with.

27.    On information and belief, when CZM examined the returned equipment, it performed certain operations to restore the Optovue Trade Secret information and improperly gained access thereto. Exs. A and B.

OPTOVUE'S COMPLAINT FOR DECLARATORY JUDGMENT; DEMAND FOR JURY TRIAL

pa-1172783

28.   On May 2, 2007, Optovue requested that CZM identify the information it had improperly accessed and the identities of individuals at CZM who had been exposed to this information.  Ex. C.

29.   CZM did not respond to these requests and, on information and belief, still unlawfully possesses the Optovue Trade Secrets.

30.   On information and belief, CZM's acts of misappropriation were willful and malicious, and will continue, causing irreparable harm to Optovue, unless enjoined by this Court.

### Optovue's Right To Continue to Employ William Shields

31.   William Shields is the former CZM Sales Director for Europe, Diagnostic Products.  Mr. Shields is now the Vice President of International Sales at Optovue.

32.   When Mr. Shields began his employment at CZM in December 2004, he signed a contract in which he agreed that:

> for a period of two years following the date of termination of my employment with the Company, I will not disrupt, damage, impair or interfere with the business of the Company, whether by way of interfering with or recruiting its employees, disrupting its relationship with customers, agents, representatives, or vendors. Upon termination, *I am not, however, restricted from being employed by or engaged in a competitive business.* (emphasis added).

Ex. D.

33.   On June 7, 2007, without providing notice to Mr. Shields or to counsel for Optovue, CZM filed a Complaint and served a Temporary Restraining Order against Mr. Shields in the Superior Court for the Commonwealth of Massachusetts, alleging among other claims, trade secret misappropriation.  CZM seeks to enjoin Mr. Shields from working for Optovue for two years under the so-called "inevitable disclosure" doctrine.

34.   Over the past eighteen years, most of which was before his employment with CZM, Mr. Shields has developed extensive experience in the marketing and sale of ophthalmic equipment.  On information and belief, CZM hired Mr. Shields to get access to his previously-accumulated knowledge, skills, and business contacts in the ophthalmic community.

1    35.    During his tenure at CZM, Mr. Shields was not significantly involved in

2    developing pricing plans, budget plans, or sales forecasts, and most important decisions

3    in his area of work were made at the German headquarters of CZM's parent.

4    36.    The "inevitable disclosure" doctrine and CZM's request that Mr. Shields

5    be enjoined from working for Optovue are inconsistent with public policy in California,

6    which ensures California employers access to a national pool of potential employees.

7    37.    At no time has Optovue gained improper access to CZM computers, nor

8    has it misappropriated any CZM trade secrets, nor has it infringed any valid copyright of

9    CZM, nor has it engaged in any act of unfair competition as CZM alleges.

10    **FIRST CLAIM FOR RELIEF**

11    **(Declaration of No Violation under the Computer Fraud and Abuse Act)**

12    38.    Optovue repeats and realleges each and every allegation made above as

though fully set forth herein.

13    39.    CZM alleges that one or more of Optovue's current employees and/or

14    consultants, while still employed by CZM, gained access to confidential information

15    stored on CZM-owned computer equipment and communicated such information to

16    Optovue.  CZM also alleges that one or more of Optovue's current employees failed to

17    return removable computer media containing CZM confidential information at the

18    termination of his employment at CZM.

19    40.    Optovue denies that any of its current employees intentionally accessed a

20    CZM computer without authorization.  Optovue denies that any of its employees

21    communicated CZM computer-stored confidential information to Optovue or caused

22    related loss to CZM or any other party.

23    41.    There exists an actual and justiciable controversy between CZM and

24    Optovue with respect to CZM's allegation of access to computer-stored confidential

25    information by CZM's former employees and/or consultants.

26    42.    Therefore, Optovue seeks a declaratory judgment that none of its

27    employees and/or consultants violated the Computer and Fraud and Abuse Act, 18

28

OPTOVUE'S COMPLAINT FOR DECLARATORY JUDGMENT;
DEMAND FOR JURY TRIAL

pa-1172783

1  U.S.C. §1030. A judicial declaration is necessary and appropriate at this time so that

2  Optovue can ascertain its rights.

3  ## SECOND CLAIM FOR RELIEF
   ### (Declaration of No Unfair Competition Under Lanham Act)

4

5  43.    Optovue repeats and realleges each and every allegation made above as

   though fully set forth herein.

6
7  44.    CZM alleges that Optovue has engaged in false, misleading, and

   deceptive business practices by marketing the RTVue product with the phrase

8  "developers of the first OCT systems in eye care."

9
10  45.    Optovue denies that it has engaged in any misleading and deceptive

   business practice under 15 U.S.C. § 1125.

11
12  46.    There exists an actual and justiciable controversy between CZM and

13  Optovue with respect to such allegedly false, misleading or deceptive business practices

   by Optovue.

14
15  47.    Optovue seeks a declaratory judgment that it has not engaged in false,

   misleading or deceptive business practices as alleged by CZM. A judicial declaration is

16  necessary and appropriate at this time so that Optovue can ascertain its rights.

17
18  ## THIRD CLAIM FOR RELIEF
   ### (Declaration of Noninfringement of Copyright)

19  48.    Optovue repeats and realleges each and every allegation made above as

20  though fully set forth herein.

21  49.    CZM alleges that Optovue has infringed its copyrights by distributing

22  certain marketing material entitled "Interpretive Key."

23  50.    Optovue denies that there is any protectable copyright in CZM's

24  marketing material. Optovue also denies that it has infringed any protectable expression

25  under 17 U.S.C. § 101, *et seq.*

26  51.    There exists an actual and justiciable controversy between CZM and

27  Optovue with respect to the infringement of any valid copyright interest CZM may

28  possess in such material.

-8-    OPTOVUE'S COMPLAINT FOR DECLARATORY JUDGMENT;
       DEMAND FOR JURY TRIAL

52.    Optovue seeks a declaratory judgment that it has not infringed any valid CZM copyrights. A judicial declaration is necessary and appropriate at this time so that Optovue can ascertain its rights.

### FOURTH CLAIM FOR RELIEF
#### (Declaration of No Unfair Competition under Cal. Bus. & Prof. Code § 17200, *et seq.*)

53.    Optovue repeats and realleges each and every allegation made above as though fully set forth herein.

54.    CZM alleges that Optovue has engaged in unlawful, unfair and and/or fraudulent business practices within the meaning of California Bus. & Prof. Code § 17200, *et seq.*, by interfering with CZM's contractual relations with third parties.

55.    Optovue denies that it has engaged in any unlawful, unfair and and/or fraudulent business practices within the meaning of California Bus. & Prof. Code § 17200, *et seq.*

56.    There exists an actual and justiciable controversy between CZM and Optovue with respect to such allegations of unlawful, unfair and and/or fraudulent business practices.

57.    Optovue seeks a declaratory judgment that it has not engaged in any unlawful, unfair and and/or fraudulent business practices under California Bus. & Prof. Code § 17200, *et seq.*, as alleged by CZM. A judicial declaration is necessary and appropriate at this time so that Optovue can ascertain its rights.

### FIFTH CLAIM FOR RELIEF
#### (Declaration of No Trade Secret Misappropriation by Optovue)

58.    Optovue repeats and realleges each and every allegation made above as though fully set forth herein.

59.    CZM alleges that Optovue misappropriated CZM trade secrets with respect to Optovue's Patent Application No. 11/056537 (the "'537 Application").

60.    Optovue denies that it misappropriated any CZM trade secrets in connection with prosecution of the '537 Application.

-9-    OPTOVUE'S COMPLAINT FOR DECLARATORY JUDGMENT;
DEMAND FOR JURY TRIAL

61.     There exists an actual and justiciable controversy between CZM and Optovue with respect to CZM's allegation of trade secret misappropriation relating to the '537 Application.

62.     Optovue seeks a declaratory judgment that it has not misappropriated any trade secrets of CZM. A judicial declaration is necessary and appropriate at this time so that Optovue can ascertain its rights.

## SIXTH CLAIM FOR RELIEF
**(Declaration of Optovue's Right to Continue to Employ William Shields)**

63.     Optovue repeats and realleges each and every allegation made above as though fully set forth herein.

64.     CZM seeks to preclude Mr. Shields from working for Optovue, a California corporation, for two years.

65.     CZM's attempt to preclude Mr. Shields from working for Optovue is improper and seeks to deprive Optovue of its right to free access to a national pool of potential employees.

66.     There exists an actual and justiciable controversy between CZM and Optovue with respect to Optovue's and its employees' (and prospective employees') rights to be free from trade restraints.

67.     Optovue seeks a declaratory judgment that it has the right to continue employ Mr. Shields. A judicial declaration is necessary and appropriate at this time so that Optovue can ascertain its rights with respect to its workforce.

## SEVENTH CLAIM FOR RELIEF
**(Trade Secrets Misappropriation by CZM)**

68.     Optovue repeats and realleges each and every allegation made above as though fully set forth herein.

69.     On information and belief, CZM has obtained and used or intends to use Optovue's Trade Secrets without authorization, to design and/or manufacture competing OCT products and to assist its ongoing efforts to compete against Optovue in the ophthalmic diagnostic tools market.

70.    On information and belief, CZM has acted with knowledge that the information it unlawfully acquired and used was Optovue's Trade Secrets, and that it was not authorized to possess or use these Trade Secrets; CZM has therefore acted willfully and maliciously.

71.    On information and belief, CZM's acts of misappropriation will continue, causing severe and irreparable harm to Optovue, unless enjoined by this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Optovue prays for judgment as follows:

1.    For a declaration that Optovue has not violated the Computer and Fraud and Abuse Act, with respect to any computer owned by CZM.

2.    For a declaration that Optovue has not engaged in false, misleading or deceptive business practices, by using the phrase "developers of the first OCT systems in eye care."

3.    For a declaration that no valid copyright exists in CZM's marketing materials; or to the extent that such rights exist, for a declaration that CZM does not own such rights; or to the extent that CZM owns such rights, that Optovue has not infringed them.

4.    For a declaration that Optovue has not engaged in unfair competition under Cal. Bus. & Prof. Code § 17200, *et seq.*

5.    For a declaration that Optovue has not misappropriated any valid trade secrets of CZM.

6.    For a declaration that Optovue has the right to continue to employ Mr. Shields.

7.    For injunctive and compensatory relief against CZM for its misappropriation of the Optovue Trade Secrets, including enhancement of damages.

//

//

-11-

1    8.    That Optovue be awarded its costs of suit, including reasonable attorneys'

2    fees; and

3    9.    For such other and further relief as the Court deems just and proper.

4

5    DATED:  June 11, 2007                         MORRISON & FOERSTER LLP

6

7                                                  By:  L. Scott Oliver  KAS

8                                                       James Pooley
                                                        L. Scott Oliver
9                                                       Diana Luo
                                                        Katherine Nolan-Stevaux
10                                                      Attorneys for Optovue Corporation

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPTOVUE'S COMPLAINT FOR DECLARATORY JUDGMENT;
                                                                DEMAND FOR JURY TRIAL

pa-1172783

## DEMAND FOR JURY TRIAL

Defendant Optovue demands trial by jury of all causes of action herein pursuant to F.R.C.P. Rule 38 and Local Rule 3-6(a).


DATED:   June 11, 2007

MORRISON & FOERSTER LLP

By: _L. Scott Oliver_ /cal/

James Pooley
L. Scott Oliver
Diana Luo
Katherine Nolan-Stevaux
Attorneys for Defendant
Optovue Corporation

OPTOVUE'S COMPLAINT FOR DECLARATORY JUDGMENT;
DEMAND FOR JURY TRIAL

pa-1172783

**EXHIBIT A**

# WEIL, GOTSHAL & MANGES LLP

SILICON VALLEY OFFICE
201 REDWOOD SHORES PARKWAY
REDWOOD SHORES, CALIFORNIA 94065

(650) 802-3000
FAX: (650) 802-3100

AUSTIN
BOSTON
BRUSSELS
BUDAPEST
DALLAS
FRANKFURT
HOUSTON
LONDON
MIAMI
NEW YORK
PARIS
PRAGUE
SINGAPORE
WARSAW
WASHINGTON, D.C.

April 11, 2007

JASON D. KIPNIS
DIRECT LINE (650) 802-3046
E-MAIL: jason.kipnis@weil.com

**VIA FACSIMILE AND FEDERAL EXPRESS**
Mr. James Pooley
Pooley & Oliver LLP
Five Palo Alto Square
3000 El Camino Real, 7th Floor
Palo Alto, CA  94306

Dear Mr. Pooley:

This letter is in response to your letter of November 1, 2006, to Yar Chaikovsky, my former partner. I apologize for the delay in responding, but it has taken some time to get familiar with the issues in the wake of Yar's departure. Below is a response to the points raised in your letter:

First, you observed that the application for Optovue's issued patent was filed on October 28, 2005, roughly two years after Mr. Wei's departure from Carl Zeiss Meditec ("CZM"). However, your letter failed to address the fact that Mr. Wei also filed two provisional patent applications on February 10, 2004, just several months after leaving CZM. We have studied the content of those provisional applications, and our preliminary review has determined that at least one, U.S. Provisional App. No. 60/543,862, contains confidential information of CZM that was in Mr. Wei's possession while he was employed by CZM. Further, we have also analyzed the pending Optovue patent applications claiming priority from those provisional applications, and have concluded that CZM should be the sole assignee of at least Optovue's pending U.S. Application No. 11/056,537.

Second, you mentioned that you see no reason to suspect improper use of CZM confidential information because the Optovue product relies on fourier domain technology, which is "fundamentally different" from CZM's technology. But, your client is certainly aware that CZM has been developing spectral domain OCT technology since at least 2004, because Tom Zhao, one of the founders of Optovue, was an early contributor to CZM's development of this technology before his departure from CZM in 2004.

WEIL, GOTSHAL & MANGES LLP

Mr. James Pooley
April 11, 2007
Page 2

Third, regarding Optovue's interference with CZM's contractual relations with third parties, CZM is particularly concerned about Optovue's relationship with Prof. David Huang. Specifically, until recently, Prof. Huang was a long-term scientific adviser to CZM, and he now serves on Optovue's scientific advisory board. While Prof. Huang was working with CZM, he had in his possession a prototype CZM OCT device and a production CZM OCT device. CZM has re-possessed its OCT devices from Prof. Huang, and found stored on one of the disk drives indications of several files, including a directory, relating to RTVue, Optovue's competing OCT product. CZM is justifiably alarmed at finding Optovue files on the disk drive of its highly confidential OCT device, and would like to understand exactly what Optovue asked Prof. Huang to investigate, whether he used any CZM equipment to do so, and whether any employee of Optovue has had access to any of the CZM equipment in Prof. Huang's possession.

Also, in our last letter, CZM pointed out a false statement regarding CZM on Optovue's website, which has since been removed. However, since our last letter, CZM has become aware of additional troubling marketing practices of Optovue. Namely, Optovue has begun distributing marketing literature for its OCT product, with the caption: "From the developers of the first OCT systems in eye care." At best, this statement is deceptive, because it is easily verifiable that CZM was the first company to provide a commercially available OCT device for eye care. CZM demands that Optovue immediately remove this false statement from its marketing materials. In addition, CZM has in its possession a marketing document provided to a physician by an Optovue salesperson, which is a complete copy of a CZM document, but with the references to CZM and CZM's product redacted. This raises a host of legal issues, including copyright infringement and unfair competition. CZM demands that Optovue immediately cease providing to customers any marketing material derived from CZM documentation.

I hope you find that the additional information in this letter sufficiently answers your questions, and helps you to understand CZM's concerns. CZM remains willing to discuss these issues in a productive manner, and requests a substantive response within the next two weeks. We may take further legal actions if a satisfactory response is not received within two weeks.

I look forward to your response.

Sincerely,

Jason Kipnis

JDK/mac

**EXHIBIT B**

# WEIL, GOTSHAL & MANGES LLP

SILICON VALLEY OFFICE

201 REDWOOD SHORES PARKWAY

REDWOOD SHORES, CALIFORNIA 94065

(650) 802-3000

FAX: (650) 802-3100

May 24, 2007

JASON D. KIPNIS
DIRECT LINE (650) 802-3046
E-MAIL: jason.kipnis@weil.com

AUSTIN
BOSTON
BRUSSELS
BUDAPEST
DALLAS
FRANKFURT
HOUSTON
LONDON
MIAMI
MUNICH
NEW YORK
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SINGAPORE
WARSAW
WASHINGTON, D.C.

**VIA FACSIMILE AND FEDERAL EXPRESS**

Mr. James Pooley
Morrison Foerster
755 Page Mill Road
Palo Alto, CA 94304-1018

Dear Mr. Pooley:

This letter is in response to your letter of May 2, 2007.

Carl Zeiss Meditec (CZM) remains concerned that both Optovue and Mr. Wei are in possession of CZM confidential, proprietary and trade secret information, and possibly using such information to the detriment of CZM, and may also be engaging in other acts of unfair competition against CZM, and your letter of May 2, 2007, does nothing to alleviate such concerns. In that regard your attempts to transform Optovue and Mr. Wei into alleged "victims" simply ignores the facts which strongly suggest that both Optovue and Mr. Wei have engaged in unfair competition against CZM. As a result, CZM demands that Optovue and Mr. Wei cease and desist from engaging in any acts of unfair competition against CZM as described below or otherwise, and that Optovue and Mr. Wei confirm their compliance with these demands as set forth below.

First, there appears to be little doubt that Mr. Wei has misappropriated CZM's confidential, proprietary, and trade secret information in the context of the '537 application. To clarify, CZM is not referring to Figs. 1-3 of the '537 application, but rather Figs. 4 and 5 and associated text describing the subject matter of the patent. The CZM laboratory notebooks used by Mr. Wei reveal that he developed many of the ideas contained in Figures 4 and 5 and the associated text while employed at CZM. Please confirm, immediately, that Optovue and Mr. Wei assign to CZM all rights in and to the invention described in the '537 application and all patents and rights of all kinds throughout the world for all such subject matter. Needless to say, the laboratory notebooks are the property of CZM, and contain proprietary, confidential, and/or trade secret information of CZM, so therefore they will not be provided.

SV1:\272065\01\5TXD01!.DOC\33842.0003

WEIL, GOTSHAL & MANGES LLP

Mr. James Pooley
May 24, 2007
Page 2

Second, the intellectual property that Dr. Zhao developed at CZM relating to SD-OCT is certainly not in the public domain and is owned by CZM . In that regard, CZM demands that Optovue detail in writing how Optovue and Dr. Zhao will ensure that he has not, and will not, reveal or use (inadvertently or otherwise) CZM's confidential, proprietary, and trade secret information during the development of Optovue's SD-OCT product or otherwise.

Third, Optovue's continued use of the statement "From the developers of the first OCT systems in eye care," is misleading and deceptive, and Optovue's attempts to suggest otherwise are not credible. This statement clearly suggests that Optovue was the developer of the first OCT system in eye care, when in fact Optovue did not even exist when CZM developed the first commercial OCT system. CZM demands that Optovue immediately cease and desist from using this deceptive statement, and confirm in writing that it has complied with CZM's demand.

Fourth, enclosed is a copy of two marketing cards. The bottom card is distributed by CZM (and includes CZM contact information on the reverse side), and the top card was personally delivered to a physician in Texas by an Optovue salesperson. On its face, there is no doubt that Optovue obtained a copy of the CZM card, redacted certain information, made a one sided color copy and then used the card to market and promote Optovue and its products. At a minimum, this is a clear infringement of CZM's' copyright of the card, and supports a variety of other claims for unfair competition, as it apparently is just an example of Optovue's efforts to compete unfairly with CZM . CZM demands that Optovue immediately cease and desist from using this card, and any other copyrighted works owned by CZM, and confirm in writing that it has complied with CZM's demand.

Fifth, CZM does not have possession of any confidential Optovue data. CZM has determined that certain files relating to RTVue were at one time apparently stored on the disc drive of at least one of CZM's secret prototype devices. Critically, however, CZM does not have, and never has had, these files, and was not responsible for placing those files on the CZM device. Instead, CZM first learned of the apparent existence of those files on the CZM prototype after it was returned to CZM by Dr. Huang, who was engaged by CZM in a confidential and proprietary study involving the CZM prototype at the time. Significantly, CZM ended its relationship with Dr. Huang after learning that Dr. Huang was an investor in Optovue (and now a member of Optovue's Scientific and Medical Advisory Board). This leaves only one question: what is Optovue's explanation for how Optovue files were loaded onto CZM's secret prototype device in the middle of a confidential study? The statement in your letter that "Dr. Huang informs us that he deleted all Optovue data that was on a CZ computer in Dr. Huang's lab before it was returned to CZ" is an admission that Optovue and Dr. Huang were aware the Optovue information was being stored on a CZM device. As a result, CZM demands that Optovue immediately provide all information relating to the Optovue files stored on the device, including the nature of the files, the reasons they were stored on the device, the dates they were stored on the device, the reasons for removal, the names of any Optovue employees or agents who had access to the device, and the names of any, and all, individuals who have knowledge regarding these issues. In addition, CZM demands that Optovue immediately disclose to CZM, and cease and desist from using or

WEIL, GOTSHAL & MANGES LLP

Mr. James Pooley
May 24, 2007
Page 3

disclosing otherwise, any CZM confidential, proprietary, and trade secret information that Optovue may have obtained by virtue of access to CZM's secret prototype or otherwise.

Given CZM's concerns that Optovue and Mr. Wei are engaging in unfair competition, CZM demands that Optovue, Mr. Wei, and Optovue's agents and employees (including William Shields), retain and not destroy or alter any and all hard copy or electronic information relating to the subject matters discussed herein.

CZM demands that Optovue and Mr. Wei comply with the above demands immediately, and confirm their compliance in writing no later than May 31, 2007. Given the serious nature of the matters discussed herein, this letter is written without waiver of any of CZM's rights and remedies, all of which are expressly reserved.

Very truly yours,

Jason Kipnis

JDK/mac

Enclosure

SV1:\272045\01\STXD01LDOC\33542.0003

May-24-07  06:06pm    From-WEIL GOTSHAL AND MANGES,LLP        +16509266275        T-323  P.05/05  F-052



**EXHIBIT C**

MORRISON    FOERSTER

755 PAGE MILL ROAD
PALO ALTO
CALIFORNIA 94304-1018

TELEPHONE:650.813.5600
FACSIMILE:650.494.0792

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

DENVER, NORTHERN VIRGINIA,
ORANGE COUNTY, SACRAMENTO,
WALNUT CREEK, CENTURY CITY

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

James Pooley
(650) 813-5710
jpooley@mofo.com

May 2, 2007

**VIA FACSIMILE (650) 802-3100**

Jason Kipnis, Esq.
Weil, Gotshall & Manges
201 Redwood Shores Parkway
Redwood Shores, CA 94065

           Re:    Optovue Corporation (Carl Zeiss Meditec Demand)

Dear Jason:

       Thank you for your letter of April 11, 2007 regarding Carl Zeiss and Optovue.

       First, we are extremely concerned by your statement that Carl Zeiss ("CZ") has come into possession of Optovue trade secret information. Dr. David Huang informs us that he deleted all Optovue data that was on a CZ computer in Dr. Huang's lab before it was returned to CZ. Your letter suggests that CZ has somehow resurrected deleted RTVue data, although you do not provide us with the names of the specific files that CZ has obtained. Please immediately provide the names of *all* individuals at CZ who have been exposed to this information, as well as the files they have been exposed to.

       Moreover, as you are aware, Dr. Huang consults with both CZ and Optovue, and of course his laboratory uses both companies' products—as well as those from other companies—in testing technology. The question is not whether he worked with both companies' software, but whether CZ somehow misappropriated previously-deleted information owned by Optovue.

       With respect to your question about Optovue's provisional patent applications, there is no confidential CZ information in the '862 and '537 applications. As you will note in those applications, Figures 1 and 2 depict the general prior art, including other companies' products. Figure 3 depicts a prior art CZ German product that is well known to those of skill in the field. That is the only relationship between these applications and CZ. If you have some other factual basis for suggesting that CZ information is contained in those applications, please let me know.

MORRISON     FOERSTER

Jason Kipnis, Esq.
May 2, 2007
Page -2-

    With respect to your question about Fourier domain technology, the technology is in the public domain, and numerous papers have been published on the topic in the last decade.  As I informed Yar last November, nothing in Optovue's Fourier domain product is based on work done at CZ.  In addition, we are informed that Tom Zhao's only work on the technology while at CZ was based on public domain sources, and in any event Mr. Zhao contributed nothing to Optovue's Fourier domain product.

    As for your suggestion that the statement "From the developers of the first OCT systems in eye care" is deceptive," I am puzzled.  Dr. Wei is—as you know—the developer of the first OCT system.  Optovue's marketing department is certainly permitted to point out this fact, and nothing in the statement makes any reference to CZ or suggests any affiliation with CZ.  If you are aware of any case law supporting your contention that this is a false and deceptive statement, please forward it to me.

    Finally, you refer to an unidentified piece of marketing material "provided to a physician."  Without more information, it is not possible for me to respond.  Please forward a copy of the document to which you are referring.

    While we have since last November remained willing to discuss your concerns, your April 11 letter puts a new and very important issue on the table: CZ's possession of Optovue trade secret information.  I look forward to receiving the information I have requested, so that we can determine appropriate next steps.

Very truly yours,

James Pooley

JP:kgo

cc:  Jay Wei, President & CEO
      Optovue Corporation

Internal Documents 4812-7774-4129.1

**EXHIBIT D**



## EMPLOYEE AGREEMENT

In exchange for my becoming employed by Carl Zeiss Meditec Inc. or its parent company, subsidiaries, affiliates or successors (hereinafter referred collectively as the "Company"), I hereby agree as follows:

1. **Basic Obligations of Employee.** I will perform for the Company such duties as may be designated by the Company from time to time. During my period of employment by the Company, I will devote my best efforts to the interests of the Company and will not engage in other employment or in any activities detrimental to the best interests of the Company without prior or written consent of the Company.

2. **Definitions of "Invention".** As used in this Agreement, the term "Invention" includes designs, discoveries, formulas, processes, manufacturing techniques, trade secrets, inventions (whether they can be patented or not), improvements, ideas or works that can be copyrighted, including all rights to obtain, register, perfect and enforce these proprietary interests.

3. **Definition of "Confidential Information".** As used in this agreement, the term "Confidential Information" means information pertaining to any aspect of the Company's business which is information not known by actual or potential competitors of the Company, proprietary information of the Company or its customers or suppliers, or information designated by the Company as Confidential. Confidential Information covered by this Agreement specifically includes, but is not limited to research and development activities, requests for proposals, bids, proposals, marketing plans and strategies, business plans and strategies, financial statements, profitability information, budgets, projections, surveys, client lists, and personnel and payroll information.

4. **Assignment of Inventions.** I agree that, with the exception of inventions excluded by California Labor Code section 2870, any and all inventions which I may solely or jointly conceive, develop or reduce to practice during the period of my employment with the Company: (a) which pertain to any line or actual business activity or demonstrably anticipated research or development of the Company; (b) which conception, development or practice are aided by the use of time, materials, facilities or the confidential information of the Company, whether or not during working hours; or (c) which inventions relate to any of the work during the period of my employment with the Company, whether or not during normal working hours, belong to Company. I promise, without further compensation, to assign to the Company my entire right, title and interest to said inventions.

   I further agree, any works that can be copyrighted that I develop and are usable in the Company's business are works made for hire and belong to the Company. If for any reason any work that can be copyrighted is not considered as works made for hire, I promise, without further compensation, to assign to the Company my entire right, title and interest in and to said copyrights.

5. **Perfection of the Company's Title in Inventions.** I agree to execute all documents requested by the Company regarding the filing and prosecution of all applications for patents and inventor's certificates, enforcement of all patents, and maintenance of all rights in the inventions, patents, inventor's certificates and applications for patents or inventor's certificates based on the inventions.

   In addition, upon request of the Company, and at its expense, regarding the filing and prosecution of all applications for patents and inventor's certificates, enforcement of all patents and maintenance of all rights in the inventions, patents and inventor's certificates and application for patents or inventor's certificates based on the inventions, I agree to provide the Company all information known to or ascertainable by me and all documents and other materials and objects pertaining to the Company's rights in the inventions that are in the possession of or accessible to me, and further, at any trial hearing, deposition, or other legal proceeding where I am called as a witness by the Company, I agree to testify to all facts pertaining to the Company's rights in the inventions for which I am competent to testify.

6. **Nondisclosure of Confidential Information.** I agree to hold in confidence and not directly or indirectly to use or disclose, either during or after termination of my employment with the Company, any Confidential Information I obtain or create during the period of my employment, whether or not during working hours, except to the extent authorized by the Company, until such Confidential Information becomes generally known. I agree not to make copies of such Confidential Information except if authorized by the Company. Upon Termination of

Page 2 of 2

my employment or upon an earlier request of the Company, I will return or deliver to the Company all tangible forms of such Confidential Information in my possession or control including, but not limited to drawing, specifications, documents, records, devices, models or any other material and copies or reproduction thereof.

7. **Cooperation.** I agree that for a period of one year, (365 days) following the termination of my employment, I will cooperate with the Company in maintaining customer relations with any and all customers with whom I had contact during the course of my employment with the Company.

8. **Non-Interference.** During my employment and for a period of two years following the date of termination of my employment with the Company, I will not disrupt, damage, impair or interfere with the business of the Company, whether by way of interfering with or recruiting its employees, disrupting its relationship with customers, agents, representatives, or vendors. Upon termination, I am not, however, restricted from being employed by or engaged in a competitive business.

9. **Performance of This Agreement Not a Breach of Any Other Agreement.** I represent that my performance of all the terms of this Agreement and as an employee of the Company does not and will not breach any agreement to keep in confidence proprietary information knowledge or data acquired by me in confidence or in trust prior to my employment with the Company, and I will not disclose to the Company, or induce the Company to use, any confidential or proprietary information or lateral belonging to any previous employer or others. I agree I will not enter into any agreement either written or oral in conflict with the provisions of this Agreement.

10. **Scope of the Agreement.** This Agreement shall survive my employment with the Company. However, this Agreement does not, in any way restrict the right of the Company to terminate my employment at any time with or without cause and with or without notice at the Company's sole discretion. This Agreement is transferable to the benefit of successors and assigns of the Company; and is binding upon all heirs and legal representatives.

11. **Other Agreements.** I certify that, to the best of my information and belief, I am not a party to any other agreement that will interfere with my full compliance with the Agreement.

12. **Termination Certification.** I agree upon termination of employment with the Company to reaffirm my obligations set forth above, including signing the "Termination Certification" provided to me by the Company. A copy of the current Termination Certification is attached.

13. **Severance of Agreement Terms or Provisions.** In the event that any of the terms or provisions of this Agreement shall violate any statutory provision or may be otherwise unlawful or inoperative, it is the intent and desire of the parties that the Agreement operate and be in full force and effect insofar as it does not violate the statutory provisions or is otherwise lawful and that this Agreement be carried out as far as possible and is consistent with its tenor and effect.

14. **Section Headings.** The section headings contained herein are for reference purposes only and in no way will any of them affect the meaning and interpretation of this Agreement.

15. **No Employment Contract.** This Agreement does not constitute an employment contract between the parties, nor does it recognize any obligation or promise of continued employment.

I certify and acknowledge that I have carefully read all of the provisions of this Agreement and that I understand and will fully comply with such provisions. I have completed "Attachment I" to list any inventions, if any, I solely or jointly conceived, developed or reduced to practice prior to the period of my employment with the Company.

| EMPLOYEE | CARL ZEISS MEDITEC INC. |
|---|---|
| _(signature)_ | _(signature)_ |
| Employee Signature | Signature |
| William T. Shields | MARCO ROSA |
| Print Name | Print Name |
| 12/6/04 | VP HR |
| Date | Title            12-2-04 |
|  | Date |

Zeiss EmployeeAgreement_Form.doc
Revised: October 2004