# EXHIBIT F

LEXSEE

⚠
Caution
As of: Jul 26, 2007

Rod Bolton et al. v. Actuant Corporation & Wachovia Bank, N.A.

Case No.: CV 03-08184 PA (CWx)

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

2004 U.S. Dist. LEXIS 15192; 32 Employee Benefits Cas. (BNA) 3032

March 5, 2004, Decided
March 8, 2004, Docketed on CM

**DISPOSITION:** [*1] Plaintiffs' First Amended Complaint dismissed without leave to amend.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff former employees sued defendant corporation which acquired their employer, formed a new entity from the employer, and eventually spun off the employer as an independent entity. The employees sought a declaration that the corporation remained liable to fund the employer's deferred compensation plan. The corporation moved to dismiss the complaint for lack of jurisdiction.

**OVERVIEW:** The corporation contended that there was no case or controversy to permit the exercise of federal jurisdiction. The employees argued that, in the absence of a determination of the corporation's liability under the deferred compensation plan, the employees could not make informed decisions concerning their deferred compensation funds in the event the successor entity became insolvent. The court held that it lacked jurisdiction to grant declaratory relief to clarify future rights and responsibilities with respect to the plan. There was no actual case or controversy where the employees sought a determination of the validity of a potential defense of the corporation to a future breach of contract claim of the employees if the successor entity ceased funding the plan and the corporation refused to fund the shortfall. The employees merely sought an advisory opinion, and there could be no case or controversy until the successor entity defaulted and the corporation refused to cure the default.

**OUTCOME:** The corporation's motion to dismiss the employees' complaint was granted without leave to amend.

**CORE TERMS:** declaratory judgment, hypothetical, declaration, pension, merger, investor, retire, beneficiaries, subject matter jurisdiction, advisory opinion, retirement, deferred, wholly-owned subsidiary, substantial controversy, constitutional sense, investment advice, collective bargaining agreement, leave to amend, contractual, repudiation, redemption, presently, impending, breached, ripeness, clarify, funding, entities, stock, ripe

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Declaratory Judgment Actions > Federal Judgments > General Overview*
*Constitutional Law > The Judiciary > Congressional Limits*
[HN1]The Declaratory Judgment Act applies only in cases of actual controversy. 28 U.S.C.S. § 2201. This conforms with U.S. Const. art. III, § 3, cl. 1, which limits judicial power of federal courts to cases and controversies. In order for a court to have subject matter jurisdiction, a dispute must be immediate, concrete, real, substantial. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having

Page 1

Case 4:07-cv-03010-CW  Document 25-7  Filed 07/26/2007  Page 3 of 6

2004 U.S. Dist. LEXIS 15192, *; 32 Employee Benefits Cas. (BNA) 3032

adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Civil Procedure > Justiciability > Case or Controversy Requirements > General Overview*
*Constitutional Law > The Judiciary > Case or Controversy > General Overview*
[HN2]Claims to clarify future rights and responsibilities with respect to pension plans do not satisfy the case or controversy requirement under U.S. Const. art. III.

*Civil Procedure > Justiciability > Case or Controversy Requirements > General Overview*
*Civil Procedure > Declaratory Judgment Actions > General Overview*
[HN3]The Declaratory Judgment Act is designed to relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure or never. The Act permits parties so situated to forestall the accrual of potential damages by suing for a declaratory judgment, once the adverse positions have crystallized and the conflict of interests is real and immediate.

*Civil Procedure > Justiciability > Case or Controversy Requirements > General Overview*
*Civil Procedure > Pleading & Practice > Pleadings > General Overview*
*Constitutional Law > The Judiciary > Case or Controversy > Advisory Opinions*
[HN4]A district court may, and should, grant leave to amend when it appears that subject matter jurisdiction exists over the action, even though the complaint inadequately alleges jurisdiction. 28 U.S.C.S. § 1653. However, § 1653 is designed to remedy defective allegations of jurisdiction, not defective jurisdiction itself, and leave need not be given when it is clear that the complaint could not be saved by any further amendment.

**COUNSEL:** Attorneys Present for Plaintiff: None.

Attorneys Present for Defendants: None.

For Rod H Bolton, John O Buyse, Jr, George A Daniels, Wilford D Godbold, Jr, James F Hermanson, Michael D Leroy, Jay R Manwaring, John G Mogler, Louis G Shew, William Stewart, George Vogel, Plaintiffs: John R Shiner, Morrison & Foerster, Los Angeles, CA. Steven M Haines, Morrison & Foerster, Los Angeles, CA.

For Actuant Corporation, a Wisconsin corporation, Defendant: Jill Lynn Johnson, Bacon Law Offices, Brea, CA. Theodore E Bacon, Bacon Law Offices, Brea, CA.

For Wachovia Bank N A, a Delaware corporation, Defendant: Christa Haas, Groom Law Group, Chartered, Washington, DC. Michael J Prame, Groom Law Group, Chartered, Washington, DC. Stephen B Sadowsky, Lightfoot Vandevelde Sadowsky, Medvene & Levine, Los Angeles, CA.

**JUDGES:** PRESENT: HONORABLE PERCY ANDERSON, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** PERCY ANDERSON

**OPINION**

*CIVIL MINUTES - GENERAL*

**PRESENT: HONORABLE PERCY ANDERSON, UNITED STATES DISTRICT JUDGE**

PROCEEDINGS: IN CHAMBERS - COURT ORDER

The Court has before it defendant Actuant Corporation's [*2] ("Actuant") Motion to Dismiss the First Amended Complaint (Docket No. 19) filed by plaintiffs Rod Bolton, John Buyse, George Daniels, Wilford Godbold, James Hermanson, Michael Leroy, Jay Manwaring, John Mogler, Louis Shew, William Stewart, and George Vogel ("Plaintiffs"). Defendant Wachovia Bank ("Wachovia") joined Actuant's Motion to Dismiss.

Plaintiffs allege that they are former employees of Zero Corporation ("Zero") and beneficiaries under a deferred compensation plan established by Zero in 1993 (the "Plan"). First Amended Complaint, PP18-20. In the event of a merger or other change in control of Zero, the "Company," which includes Zero, its assigns, and any successor company, must deposit into a trust assets equal to the value of the beneficiaries' contributions to the Plan plus interest. *Id.*, P20. Beneficiaries have the right to withdraw their funds at any time subject to a ten percent forfeiture and other penalties. *Id.*

Zero merged with Actuant in 1998. *Id.*, P22. Pursuant to the terms of the merger, Zero became a wholly-owned subsidiary of Actuant. *Id.* Prior to the completion of the merger, and according to the terms of the Plan, Zero funded a trust with assets [*3] equal to the value of the beneficiaries contributions to the plan plus interest. *Id.*, P23. Wachovia became trustee. *Id.* Actuant and Zero filed a joint proxy statement with the Securities and Exchange Commission in July 1998 explaining that "Zero has an obligation to fund the trust to the extent the trust's

Case 4:07-cv-03010-CW    Document 25-7    Filed 07/26/2007    Page 4 of 6

2004 U.S. Dist. LEXIS 15192, *; 32 Employee Benefits Cas. (BNA) 3032

assets are less than the value of its obligations, and after the Merger, [Actuant] must satisfy this obligation to the extent Zero fails to do so." *Id.*, P24.

Following the merger, Actuant changed Zero's name to APW North America, Inc. *Id.*, P26. Actuant then formed APW Ltd. as a wholly-owned subsidiary of Actuant and made APW North America, Inc. a wholly-owned subsidiary of APW Ltd. *Id.* In July 2000, Actuant spun off APW Ltd. by transferring all of the outstanding shares of APW Ltd. to Actuant's shareholders. *Id.*, P27. As a result of the spinoff, APW Ltd. became a separately traded company and was no longer affiliated with Actuant. *Id.* In 2002, APW Ltd. filed for bankruptcy and completed a Chapter 11 reorganization. *Id.*, P28. As a result of the bankruptcy reorganization, APW Ltd. became a privately held company and Plaintiffs have been unable to [*4] obtain current information about the financial viability of APW Ltd. or APW North America, Inc. *Id.*, PP28 & 29.

Plaintiffs do not allege that either APW North America, Inc. or APW Ltd. have breached the Plan by failing to make any payments. Instead, Plaintiffs' First Amended Complaint only seeks a declaration that Actuant is still liable to make payments and fund the Plan "to the extent [APW North America] fails to do so" and continues to fall within the Plan's definition of the "Company" even after its spinoff of APW Ltd. *Id.*, PP36(a) & (b). Actuant has disclaimed further responsibility to fund the Plan. *Id.*, P33. Plaintiffs request the declaration because "unless and until this obligation of Actuant is confirmed, plaintiffs are unable to make informed decisions regarding a) whether to withdraw their deferred compensation funds at an early date and suffer a 10% penalty, or b) allow the funds to remain in the Trust for distribution under the options selected with the risk that these funds could be subject to creditor or other claims in the event APW Ltd. or APW North America, Inc. becomes insolvent." *Id.*, P31.

Defendants contend that this Court lacks subject matter [*5] jurisdiction over Plaintiffs' claim because no actual case or controversy currently exists between the parties. Instead, Actuant argues, Plaintiffs are seeking an advisory opinion. [HN1]The Declaratory Judgment Act applies only in "cases of actual controversy." 28 U.S.C. § 2201. This conforms with Article III, Section 1, of the Constitution which limits judicial power of federal courts to "cases" and "controversies." In order for a court to have subject matter jurisdiction, a dispute must be "immediate, concrete; real, substantial." *Stewart v. M.M. & P. Pension*, 608 F.2d 776, 782 (9th Cir. 1979). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 512, 85 L. Ed. 826 (1941); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41, 57 S. Ct. 461, 464, 81 L. Ed. 617 (1937) ("A justiciable controversy is thus distinguished [*6] from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.").

Several courts have concluded that [HN2]claims to clarify future rights and responsibilities with respect to pension plans do not satisfy Article III's case or controversy requirement. See *Stewart*, 608 F.2d at 784-85; *Systems Council EM-3 v. AT&T Corp.*, 333 U.S. App. D.C. 63, 159 F.3d 1376, 1383 (D.C. Cir. 1998); *United Steelworkers of America Local 2116 v. Cyclops Corp.*, 860 F.2d 189, 195-96 (6th Cir. 1988); *Lugo v. Employees Retirement Fund*, 529 F.2d 251, 257-59 (2d Cir. 1976). In *Stewart*, the Ninth Circuit determined that an employee's effort to clarify his eligibility for enhanced pension benefits upon retirement was not ripe for adjudication because the plaintiff had not alleged that he wanted to retire or would retire:

> No one is denying any benefit now to Stewart, nor is anyone [*7] in any way presently causing him any injury. The past and present Trustees have simply said that if, as, and when he does retire, they propose to apply [a lower level of benefits].
>
> Any number of things can, and doubtless will, happen between now and the future date of Stewart's retirement and these may well affect that event. The Plan may be amended in ways not now able to be foreseen.
>
> . . .
>
> In any event, for a case or controversy in the constitutional sense, there must be an issue which is not remote and hypothetical but which is real and present. The problem submitted to the court below was not a case or controversy in the constitutional sense. In essence, what Stewart sought was an advisory opinion for possible use in the future when, as, and if he retires for the second time.

2004 U.S. Dist. LEXIS 15192, *; 32 Employee Benefits Cas. (BNA) 3032

*Stewart*, 608 F.2d at 785; *see also Systems Council EM-3, 159 F.3d at 1383* ("This claim is hardly fit for review, however, given that no participant in the welfare plan has alleged that Lucent has been unwilling or unable to provide the benefits it is obligated to provide. The District Court correctly determined that a declaratory judgment stating the extent [*8] of AT&T's liability in the event of a Lucent breach would violate Article III's requirement that a current case or controversy exist."); *United Steelworkers of America Local 2116*, 860 F.2d at 194 ("New Boston has not failed in meeting its pension funding obligations and . . . all employees who have applied for a pension have received one. Since current employees have no contractual rights that they could vindicate in this action, while those already retired have had none of their rights violated, we hold that as to the individual plaintiffs in this action, the prospective contractual claims are not ripe."); *id.* at 196 ("Considering all of these factors, we must conclude that while an opinion resolving Cyclops' prospective liability for pension benefits could have some present impact, it would function primarily in a hypothetical capacity.")

Plaintiffs claim that the Ninth Circuit's decision in *Stewart* is not controlling and instead argue that this case should be governed by the Ninth Circuit's more recent declaratory judgment decision in *John S. Griffith Construction Co. v. United Bhd. Of Carpenters & Joiners of S. Cal.*, 785 F.2d 706 (9th Cir. 1986) [*9] ("*Griffith*"). In *Griffith*, the plaintiff sought a declaration that its repudiation of a labor agreement had been effective and that it was therefore under no obligation to the union. *Id.* at 708. The Ninth Circuit held that such a situation satisfied the Article III case or controversy requirement because the plaintiff could not adequately prepare bids for construction projects until the effectiveness of the plaintiff's repudiation was determined. *Id.* at 713. Contrary to Plaintiffs' contention, this Court does not read *Griffith* as signaling the Ninth Circuit's abandonment of *Stewart*. *Griffith*, as the Ninth Circuit stated, was a case "concerned with the doctrine of primary jurisdiction." *Id.* at 708. Griffith's discussion of ripeness is confined to the final two paragraphs of the decision and does not even hint that it is breaking new ground with respect to the actual case or controversy requirement. *Id.* at 713. Instead, *Griffith* is consistent with the Ninth Circuit's approach to ripeness issues in declaratory judgment actions which focuses on the interests of the plaintiff:

> [HN3]"The Declaratory [*10] Judgment Act was designed to relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure or never. The Act permits parties so situated to forestall the accrual of potential damages by suing for a declaratory judgment, once the adverse positions have crystallized and the conflict of interests is real and immediate."

*Societe de Conditionnement en Aluminum v. Hunter Engineering Co.*, 655 F.2d 938, 943 (9th Cir. 1981) (quoting *Japan Gas Lighter Asso. v. Ronson Corp.*, 257 F. Supp. 219, 237 (D.N.J. 1966); *see also id.* at 944 ("A better way to conceptualize the case or controversy standard is to focus on the declaratory judgment plaintiff.").

Analyzing Plaintiffs' claim for declaratory judgment under the Ninth Circuit's plaintiff focused approach underscores the dissimilarities between this case and *Griffith*. Here, it is Actuant, the declaratory judgment defendant, which faces the "Damoclean threat" of impending litigation should APW North America, Inc. or APW Ltd. fail to meet their obligations under the Plan. Rather than attempting [*11] to avoid a later finding that they breached an agreement--as was the case in *Griffith* and the other cases cited by Plaintiffs [1] --what Plaintiffs actually seek here is a determination as to the validity of one of Actuant's potential defenses to a future breach of contract claim which Plaintiffs would file *if* the APW entities cease funding the Plan and Actuant declines to make good on any shortfall. Neither the Declaratory Judgment Act nor Article III confers jurisdiction upon this Court to make such a determination. *Calderon v. Ashmus*, 523 U.S. 740, 747, 118 S. Ct. 1694, 1698, 118 S. Ct. 1694, 140 L. Ed. 2d 970 (1998) ("Respondent here seeks a declaratory judgment as to the validity of a defense the State may, or may not, raise in a habeas proceeding. Such a suit does not merely allow the resolution of a 'case or controversy' in an alternative format . . . but rather attempts to gain a litigation advantage by obtaining an advance ruling on an affirmative defense.").

---

1  *American Machine & Metals, Inc. v. De Bothezat Impeller Co., Inc.*, 166 F.2d 535 (2d Cir. 1948); *Keener Oil & Gas Co. v. Consolidated Gas Utilities Corp.*, 190 F.2d 985 (10th Cir. 1951); *Delaney v. Carter Oil Co.*, 174 F.2d 314 (10th Cir. 1949); *Fine v. Property Damage Appraisers, Inc.* 393 F. Supp. 1304, 1309-10 (E.D. La. 1975).

[*12] That Plaintiffs' "have an immediate need for this Court to remove uncertainty and insecurity from the legal relationship between Plaintiffs and Actuant" and "need to make a determination now as to whether they can rely on the safety of their tax deferred retirement funds" does not make the declaration they seek any less advisory. The Declaratory Judgment Act does not empower this Court to render investment advice:

Page 4

Case 4:07-cv-03010-CW    Document 25-7    Filed 07/26/2007    Page 6 of 6

2004 U.S. Dist. LEXIS 15192, *; 32 Employee Benefits Cas. (BNA) 3032

Here, the Court is faced with an investor, Grace, who is not unsophisticated, who contracted for preferred stock securities involving a variety of redemption provisions. From the sidelines, this investor witnessed a state court's unfavorable adjudication of another redemption feature in the contract. Now the investor desires to know how a future redemptive process will take place with respect to a risk the investor perhaps did not previously contemplate . . . .

Although Grace styled its proposed complaint as a contract dispute, there is presently no dispute on Sunshine's part; it has simply declined to speculate about the future. In actuality, Grace has petitioned the Court for investment advice as to the risk of holding versus selling its shares of [stock] [*13] . . . . From Grace's perspective, there would be much utility in this Court's fixing the odds of Grace's future investment uncertainty. This, however, is not the type of utility contemplated by the Declaratory Judgment Act, and raises concerns about the constitutional power and appropriate role of the federal courts.

*Grace Holdings, L.P. v. Sunshine Mining & Refining Co.*, 901 F. Supp. 853, 863 (D. Del. 1995); *see also United Steelworkers of America Local 2116*, 860 F.2d at 196 ("The union could claim that a statement by a court that Cyclops remained liable on the collective bargaining agreement could permit it to take further action against Cyclops to insure that it is maintaining adequate funds to meet this potential liability. However, we see nothing in the collective bargaining agreement or in the federal common law of contracts that would afford plaintiff such a right. Thus, the union would be left with a declaration of future, hypothetical rights and no present means with which to enforce it.").

Plaintiffs' Complaint seeks an advisory opinion. This Court believes that any attempt to amend the First Amended Complaint will prove futile because [*14] Plaintiffs cannot allege a case or controversy unless and until the APW entities default on their obligations and Actuant refuses to step in. [HN4]A district court may, and should, grant leave to amend when it appears that subject matter jurisdiction exists over the action, even though the complaint inadequately alleges jurisdiction. See 28 U.S.C. § 1653; *Trentacosta v. Frontier Pacific Aircraft Industries, Inc.*, 813 F.2d 1553, 1555 (9th Cir. 1987). However, 28 U.S.C. section 1653 is designed to remedy defective allegations of jurisdiction, not defective jurisdiction itself, and leave need not be given when it is clear that the complaint could not be saved by any further amendment. See *Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185, 1189 (9th Cir. 1998); *Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1380-81 (9th Cir. 1988). Accordingly, Plaintiffs' First Amended Complaint is dismissed without leave to amend.

IT IS SO ORDERED.