JAMES POOLEY (CA SBN 58041)
SCOTT OLIVER (CA SBN 174824)
DIANA LUO (CA SBN 233712)
KATHERINE NOLAN-STEVAUX (CA SBN 244950)
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California  94304-1018
Telephone: 650.813.5600
Facsimile: 650.494.0792
JPooley@mofo.com
SOliver@mofo.com
DLuo@mofo.com
KNolanstevaux@mofo.com

Attorneys for Plaintiff
OPTOVUE CORPORATION and
Counterdefendants OPTOVUE CORPORATION,
JAY WEI and YONGHUA ZHAO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| OPTOVUE CORPORATION, a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CARL ZEISS MEDITEC, INC., a New York Corporation,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS. | Case No.    C 07-03010 CW<br><br>**NOTICE OF MOTION & MOTION TO COMPEL CARL ZEISS MEDITEC, INC.'S PRODUCTION OF LAB NOTEBOOKS AND COMPUTER SOURCE CODE**<br><br>Date:    September 4, 2008<br>Time:    2:00 p.m.<br>Ctrm:    2 – 4th Floor<br><br>The Honorable Claudia Wilken |

1    PLEASE TAKE NOTICE that on September 4, 2008, at 2:00 p.m. or as soon thereafter as

2    the matter may be heard, in the courtroom of the Honorable Claudia Wilken, United States

3    District Court, 1301 Clay Street, Oakland, California, Plaintiff Optovue Corporation and

4    Counterdefendants Jay Wei and Yonghua Zhao ("Optovue") will, and hereby does, move the

5    Court for the issuance of an Order, in the proposed form accompanying this Motion, compelling

6    Defendant Carl Zeiss Meditec, Inc. ("CZM") to produce documents pursuant to Optovue's

7    Document Request Nos. 10, 11, 23, and 30.  Optovue's motion is based on this Notice of Motion,

8    the accompanying Memorandum of Points and Authorities, the Declaration of Kim Van Voorhis

9    (hereinafter "Van Voorhis Decl."), the Declaration of Diana Luo ("Luo Decl."), all attached

10    Exhibits, and all pleadings and papers on file in this action, and upon such other matters as may

11    be properly presented to the Court.

12    ## STATEMENT OF ISSUES TO BE DECIDED

13    1.    Whether CZM shall be ordered to produce the original lab notebooks from which

14    CZMI 1-14 (the pages reflecting its alleged trade secrets) were taken, in Response to Optovue's

15    Request for Production Nos. 10, 11, and 23.

16    2.    Whether CZM shall be ordered to produce its commercial OCT source code from

17    2001 to the present, in Response to Optovue's Requests for Production No. 30.

18    ## MEMORANDUM OF POINTS AND AUTHORITIES

19    ### I.    INTRODUCTION

20    CZM has failed to satisfy Optovue's Requests for Production Nos. 10, 11, 23 and 30,

21    which seek production of, among other documents, the full laboratory notebooks relevant to this

22    matter and all versions of CZM's commercial OCT source code implemented since 2001.  Both

23    the notebooks and the source code bear directly on the trade secrets CZM claims to have been

24    misappropriated; yet CZM steadfastly refuses to produce this critical information.  Fairness alone

25    dictates that CZM cannot excerpt certain documents which it claims to embody its trade secrets,

26    while at the same time preventing Optovue from exploring the context of those alleged secrets—

27    how they came to be, any use CZM made of them and what, if any, value they reflect.  Federal

28    Rule of Civil Procedure 26 also supports production, for there is no question that the documents

1   are relevant and/or likely to lead to information relevant to CZM's claims and Optovue's defense

2   to those claims.  Optovue's motion should be granted, and CZM should be ordered to produce the

3   requested discovery immediately.

4         **II.**      **STATEMENT OF FACTS**

5         CZM asserts two general trade secret claims:  one consists of  information that CZM

6   contends is embodied within fourteen pages of CZM lab notebooks, reflecting primarily the work

7   done by the counterdefendant, Jay Wei; the other relates to certain routines found within excerpts

8   of test source code written by the other counterdefendant, Tom Zhao.  CZM refuses to produce

9   key foundational discovery related to each claim.

10

11        **A.**      **CZM's Refusal To Produce The Original Lab Notebooks From Which It Culled Fourteen Pages Of Alleged Trade Secrets**

12        On February 12, 2008, in response to an interrogatory seeking all documents supporting

13  CZM's allegations that any Optovue product or any Optovue patent claiming priority from two

14  specific provisional patent applications were based on alleged CZM trade secrets, CZM produced

15  fourteen non-consecutive pages from the lab notebooks of three individuals:  Mr. Wei, Dr. Zhao,

16  and Matt Everett, a CZM employee.  Luo Decl. Ex. A.  The notebook excerpts, which are

17  attached to the Luo declaration as Exhibit A are in no apparent order and span the course of 10

18  years. *Id.*

19        Shortly after receiving this limited production, Optovue requested that CZM produce the

20  full laboratory notebooks for Mr. Wei and Dr. Zhao, pursuant to Request Nos. 10 and 11.  *See*

21  Van Voorhis Decl. ¶ 1; Luo Decl. Exs. B and D.  The full text of these requests, and CZM's

22  responses, which indicate that the documents will be made available for inspection and copying

23  "to the extent such documents are relevant to the specific claims in this litigation and likely to

24  lead to the discovery of admissible information" are set forth below:

25        **DOCUMENT REQUEST NO. 10:**

26              All lab notebooks, notes, emails, engineering reports, memos,
    research reports, research proposals, product proposals, product

27              reports, technical articles, presentations, and other correspondence
    prepared or authored or received by Jay Wei while employed by

28              CZM.

**OBJECTION TO REQUEST NO. 10:**

CZMI incorporates by reference its Preliminary Statement and General Objections above.  Additionally, CZMI objects to this request on the grounds that it is overbroad, unduly burdensome, irrelevant, and not calculated to lead to the discovery of admissible evidence.  CZMI further objects on the ground that discovery is continuing.  CZMI, therefore, shall produce additional relevant and non-privileged documents if and at such time as they are discovered.

Subject to the entry of an appropriate protective order by the court pursuant to Fed. R. Civ. P. 26 and without waiving these objections, CZMI responds as follows:  CZMI will make available for inspection and copying documents concerning the provisional patents and patents, but only to the extent such documents are relevant to the specific claims in this litigation and likely to lead to discovery of admissible evidence.

**DOCUMENT REQUEST NO. 11:**

All lab notebooks, notes, emails, engineering reports, memos, research reports, research proposals, product proposals, product reports. technical articles, presentations, and other correspondence prepared or authored or received by Yonghua Zhao while employed by CZM.

**OBJECTION TO REQUEST NO. 11:**

CZMI incorporates by reference its Preliminary Statement and General Objections above.  Additionally, CZMI objects to this request on the grounds that it is overbroad, unduly burdensome, irrelevant, and not calculated to lead to the discovery of admissible evidence.  CZMI further objects on the ground that discovery is continuing.  CZMI, therefore, shall produce additional relevant and non-privileged documents if and at such time as they are discovered.

Subject to the entry of an appropriate protective order by the court pursuant to Fed. R. Civ. P. 26 and without waiving these objections, CZMI responds as follows:  CZMI will make available for inspection and copying those documents concerning Mr. Zhao responsive to Request No. 11, but only to the extent such documents are relevant to the specific claims in this litigation and likely to lead to discovery of admissible evidence.

Luo Decl. Ex. E.

The contents of Mr. Everett's entire notebook (as well as Mr. Wei's and Dr. Zhao's) are also responsive to at least Request No. 23 as it relates to CZM's misappropriation allegations:

1    **DOCUMENT REQUEST NO. 23:**

2    All documents referring or relating to or supporting CZM's
     allegations that Optovue, Jay Wei and Yonghua Zhao
3    misappropriated any alleged CZM trade secrets.

4    **OBJECTION TO REQUEST NO. 23:**

5    CZMI incorporates by reference its Preliminary Statement and
     General Objections above.  Additionally, CZMI objects on the
6    ground that the request seeks documents protected by the attorney-
     client privilege or work-product doctrine.  CZMI further objects on
7    the ground that discovery is continuing.  CZMI, therefore, shall
     produce additional relevant and non-privileged documents if and at
8    such time as they are discovered.  Subject to the entry of an
     appropriate protective order by the court pursuant to Fed. R. Civ. P.
9    26 and without waiving these objections, CZMI responds as
     follows:
10
     CZMI will make available for inspection and copying documents
11   concerning its allegations that Optovue, Jay Wei and Yonghua
     Zhao misappropriated any alleged CZMI trade secrets in response
12   to various document requests above.

13   *Id.*

14        Notwithstanding their obvious importance to inform the defense of this case, CZM refused

15   to produce these notebooks, objecting (in spite of the existence of a protective order allowing

16   production only to counsel) that they "contain a significant amount of CZMI trade secret

17   information that has absolutely no relevance to this action."  Luo Decl. Ex. F.  Instead, CZM's

18   attorneys offered to provide five pages surrounding the previously-produced excerpts, subject to

19   their client's approval.  *Id.*  Optovue did not accept this arbitrarily limited production.

20        On April 1, during Mr. Wei's deposition, CZM referred to certain of the excerpts from

21   Mr. Wei's laboratory notebook that it had produced earlier.   Luo Decl. Ex. C (Wei Dep. 65:2-24;

22   74:17-75:14).  At that time, although it allowed the questions to proceed, Optovue again objected

23   to CZM's use of these documents because CZM still had not produced the entire notebooks,

24   which prevented Optovue from understanding the full context surrounding the claim and CZM's

25   questions to Mr. Wei.  Luo Decl. Exs. C (Wei Dep. 62:10-63:18) and D.

26

27

28

1    Shortly after Mr. Wei's deposition, the parties switched focus to a mediation process and

2    put a number of discovery issues on temporary hold.[1]  Two rounds of mediation have been

3    completed and the parties are continuing their discussions to resolve the case informally.

4    However, given the fast-approaching expert discovery deadlines (October 1, 2008 for opening

5    expert reports) and the close of fact discovery (October 31, 2008), fact discovery had to be

6    restarted.  Optovue renewed its request for the lab notebooks in a letter dated July 21st.  Luo

7    Decl. Ex. G at 2.  In response, CZM repeated its refusal to produce the documents and its offer to

8    produce five surrounding pages.  *Id.*, Ex. H.  Given the amount of information that will need to be

9    reviewed and analyzed if and when CZM is compelled to produce the notebooks and the source

10    code (discussed in more detail below), Optovue could wait no longer to file the present motion.

11              **B.    CZM's Refusal To Produce Its Commercial OCT Source Code**

12    CZM's second trade secret allegation relates to various source code routines, written by

13    Dr. Zhao while at CZM.  Oddly, this particular claim did not fully surface until March 2008,

14    when CZM abruptly asked Optovue for its commercial source code.  Luo Decl. Exs. I and J.

15    Optovue responded that it would not produce the requested code until CZM identified its "source

16    code trade secrets" with reasonable particularity.  *Id.*, Exs. B and K.  CZM initially maintained

17    that the trade secrets constituted over 300,000 lines of code, which appeared to be pulled from

18    Dr. Zhao's working code at CZM.  *See id.*, Ex. F.  CZM later narrowed its designation

19    significantly, as it is required to do (*see IDX Sys. Corp. v. EPIC Sys. Corp.*, 165 F. Supp. 2d 812,

20    819 (W.D. Wis. 2001), *aff'd in relevant part*, 285 F.3d 581 (7th Cir. 2002)), to particular routines,

21    located in just a handful of files.  Luo Decl. Exs. L and M.  These routines form the substance of

22    CZM's source code trade secret claim.

23    It appears that these routines, and Dr. Zhao's working code more generally were used only

24    in the Advanced Development Group at CZM, which was responsible for determining whether

25    new OCT devices with particular features were feasible to produce.  The Advanced Development

26    _____

27    [1] The parties agreed to temporarily stay all outstanding discovery except that which relates to the origin of the source code written by Dr. Zhao (the subject of the other CZM trade secret claim at issue in this motion).  Van Voorhis Decl. ¶ 2.

28

1   Group was separate from those who developed CZM's commercial source code, and only

2   software engineers in the software group had access to CZM's commercial source code.  Luo

3   Decl. Ex. C (Wei Dep. at 93-94).  Therefore, Optovue concluded it was unlikely that CZM's

4   software for its commercial product includes any of the claimed "trade secret" routines, or any

5   information based on them.  However, CZM has not stipulated to this.  *Id.,* Ex. P.  In order to

6   examine this question, and to consider the value of the claimed secrets in the context of the

7   software that actually runs CZM's product, Optovue pressed for documents responsive to Request

8   No. 30:

9           **DOCUMENT REQUEST NO. 30:**

10          All computer source code, in electronic form, referring or relating to
            CZM's commercially released OCT products since 2001, including
11          complete records of any revisions to that source code from 2001 to the
            present.

12      On July 18, 2008,[2] CZM responded as follows:

13          **RESPONSE TO REQUEST NO. 30:**

14
15          Responding Party hereby incorporates the Preliminary Statement and
            General Objections as though fully set forth herein. Responding Party
16          objects on the ground that this request is overly broad, unduly
            burdensome, and oppressive. Responding Party further objects on the
17          ground that this request seeks information that is not relevant or
            reasonably calculated to lead to the discovery of admissible evidence.
18          Responding Party further objects on to the extent this request seeks
            documents protected by the attorney-client privilege and/or attorney
19          work product doctrine. Responding Party further objects on to the
            extent this request seeks confidential, proprietary information
20          protected from disclosure. Responding Party further objects on the
            ground that discovery and investigation are continuing.

21          Subject to, and without waiving, the foregoing objections, responding
            party will, subject to the stipulated protective order, produce non-
22          privileged, non-protected, non-proprietary responsive materials, if any,
            in its possession, custody, or control, if this request is appropriately
23          narrowed to limit any unreasonable burden and tailored to seek only
            relevant and non-protected, non-proprietary documents. Responding
24          party agrees to meet and confer with requesting party to attempt to
            reach agreement on an appropriate scope for this request.

25

26      [2]  As discussed above, although Request 30 was served in early April 2008, the parties
        agreed to stay responses to all discovery until July 18th, with the exception of producing certain
27      source code relating specifically to the mediation process.  *See* Van Voorhis Decl. ¶ 2.

28

1   Luo Decl. Ex. N.

2        Optovue has made it clear for quite some time that CZM's commercial OCT code is

3   important to its defense, in particular because it relates directly to the "value" (or lack thereof) of

4   CZM's source code "trade secrets" and any related damages claim.  After the second mediation,

5   Optovue reiterated that it expected to receive the requested material (*id.*, Ex. H) but CZM

6   continued to press its relevance objection.  In a final attempt to compromise, Optovue offered to

7   accept CZM's stipulation that it did not use Dr. Zhao's test code or any derivation of it in its

8   commercial source code, in lieu of CZM producing the code itself.  CZM has refused.  *See id.,*

9   Exs. O-P.

10       **III.    ARGUMENT**

11       The requested laboratory notebooks and commercial source code are well within the

12   proper scope of discovery.  "Parties may obtain discovery regarding any matter, not privileged,

13   which is relevant to the subject matter involved in the pending action."  Fed. R. Civ. P. 26(b)(1).

14   Courts construe this provision broadly to include "any matter that bears on, or that reasonably

15   could lead to other matters that could bear on, any issue that is or may be in the case."

16   *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  CZM identified excerpts from

17   both lab notebooks and source code as the specific "trade secrets" at issue in this case.  It cannot

18   now prevent Optovue from exploring the context surrounding these alleged "secrets."

19       **A.    CZM Cannot Withhold the Relevant Laboratory Notebooks**

20       Paragraph 38 of CZM's counterclaim alleges that two Optovue pending patent

21   applications contain "concepts and technology that Mr. Wei, Mr. Zhao and/or others developed

22   while at CZM."  When asked to identify the specific "concepts and technology," CZM produced

23   fourteen pages containing a random smattering of notes and sketches plucked from numerous lab

24   notebooks, spanning ***10 years*** of work.  The entirety of this production/trade secret designation is

25   attached to the Luo Decl. as Ex. A.

26       As just a cursory review demonstrates, it is impossible to determine precisely what these

27   pages represent, let alone whether there is any relationship among them.  For example, from

28   Mr. Wei's deposition, it appears that CZM believes the combination of ideas referenced on

1   notebook pages CZMI 3-5 constitute a trade secret that Mr. Wei disclosed in his 60/543,862

2   provisional patent application.  Luo Decl. Ex. C (Wei Dep. at 79-81).  But the information on

3   these pages spans ***months*** and there are eight pages missing between CZMI 3 and 4.  *Id.*, Ex. A.

4   If CZM's claim is that the combination of the distinct research projects represented on these

5   pages is a trade secret, while nothing in the produced pages suggests that to be the case, Optovue

6   should at least be afforded the opportunity to understand why these pages are in the notebooks in

7   the first place, where they fit in with the rest of the research and development projects and

8   whether, at any time, CZM may have rejected or abandoned the specific combination it now

9   claims to be valuable.  Allowing access to the entire set of lab notebooks is the only reasonable

10  way to do this.

11          Similarly, CZMI 6-8 represents pages from Mr. Wei's ***1993*** notebook.  *Id.*  It is unclear

12  what relation they bear to any alleged trade secret.  CZMI 11 is just one page from Mr. Wei's

13  notebook and the subsequent pages, CZMI 12-13, are from a completely different notebook of a

14  CZM employee, Matt Everett.  *Id.*  It appears that CZM claims Mr. Wei stole the concepts

15  disclosed in these pages and used them in his 60/543,767 provisional patent application.  Here

16  again, while nothing in the pages produced suggests that Mr. Everett or anyone else at CZM ever

17  came up with the invention Mr. Wei disclosed, examination of the entire notebooks is the only

18  way to completely understand the projects Messrs. Wei and Everett were working on and how, if

19  at all, they fit into CZM's present claim.  Likewise, the only page produced to date from

20  Dr. Zhao's notebook is CZMI 9 and it is unclear how this page relates to any alleged CZM trade

21  secrets at all.  *Id.*

22          At the outset, CZM bears the burden of explaining its failure to produce the complete

23  laboratory notebooks.  *See Soto v. City of Concord*, 162 F.R.D. 603, 609 (N.D. Cal. 1995) (noting

24  that "the burden of resisting discovery is on the party opposing discovery").  To date, the only

25  excuse offered is that the notebooks contain other trade secrets unrelated to this litigation.  *See*

26  Luo Decl. Ex. F at 2.  This is hardly sufficient to prevent production, in particular because of the

27  stringent and detailed Protective Order in this case, designed specifically to allow the exchange of

28  trade secret information under the "Highly Confidential–Attorneys' Eyes Only" designation.  *See*

1    Dkt # 43.  Even if the notebooks do contain trade secret or sensitive business information

2    unrelated to this litigation, the parties' Protective Order removes any legitimate objections to

3    disclosure.  *Id.*

4         CZM's offer to produce the five pages surrounding the produced notebook pages is also

5    insufficient.  This is especially true given the wide range of dates and notebooks from which the

6    fourteen pages were culled.  CZM's point that it would have produced additional documents that

7    supported its case if they existed simply underscores Optovue's need to review the lab notebooks

8    in their entirety.  Luo Decl., Ex. Q.  Discovery is not limited to what CZM deems helpful (or not

9    harmful) to its case.  CZM put the lab notebooks into play by relying on portions of them in its

10   trade secret disclosure.  Indeed, by alleging misconduct going back to work done in 1993, CZM

11   has raised the broad issue of all the work done by Mr. Wei and Dr. Zhao while they were at CZM.

12   Allowing Optovue to explore the records of this work, and to fully trace the source of the alleged

13   secret information, all under the terms of the Protective Order, is undeniably reasonable.

14

15
**B.    CZM Has No Valid Basis for Withholding the Commercial Source Code**

16        CZM also has no valid basis for withholding the source code for its commercial OCT

17   products.  CZM identified approximately 30 pages of source code routines as the specific source

18   code "trade secrets" at issue in this case.  Without question, CZM bears the burden to establish

19   that these routines are "secrets" with economic value that derives from the fact of their secrecy.

20   Cal. Civ. Code § 3426.1(d)(1)-(2) (to constitute a trade secret, information must derive

21   "independent economic potential . . .  from not being generally known to the public or other

22   persons . . . ."); *MAI Sys. Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 521 (9th Cir. Cal. 1993)

23   (citing civil code); *Yield Dynamics, Inc. v. TEA Sys. Corp*., 154 Cal. App. 4th 547 (Cal. App.

24   2007) (affirming judgment for defendant because plaintiff failed to address the specific routines

25   allegedly misappropriated by demonstrating that their "net value" to defendant was more than

26   trivial).[3]  The commercial OCT source code is directly relevant to this inquiry.

27        _____

     [3]  It is not enough to demonstrate that the alleged trade secrets are helpful or useful—
     CZM must establish that the information in software is "sufficiently valuable . . . to afford an . . .
28                                          (Footnote continues on next page.)

1    If CZM does not use the selected "trade secret" code in its commercial product, then the

2    value of that code and any ensuing harm from Optovue's use of it is severely undercut.

3    Conversely, if CZM has used the excerpts in its commercial code, then the extent of that use is

4    relevant for the same reason. For example, it may be that CZM used some routines (or

5    derivatives of them), but not others. How CZM uses any specific excerpt is also relevant. For

6    example, Optovue expects that these excerpts, if they are used at all, will make up a very small

7    portion of CZM's overall code and that their corresponding features will be basic ones that exist

8    in any OCT machine. Optovue has requested the entire version control history for CZM's

9    commercial code (which is easy to produce)[4] because this history will show whether CZM ever

10   considered Dr. Zhao's source code for its commercial product at all, or whether, as Optovue

11   suspects, that code was completely irrelevant to CZM until this litigation happened and it was

12   looking for reasons to make claims against Optovue. In addition, CZM's counsel recently

13   confirmed that, to the extent Dr. Zhao's code was used at all, it would likely have been subject to

14   a "refine and polish" by the software developers. Luo Decl. Ex. Q. How the code was "refined

15   and polished" is precisely why all code versions are essential.

16   CZM's commercial OCT source code is also relevant to damages. Here again, if CZM is

17   able to demonstrate that its "trade secret" code excerpts have sufficient independent value, then

18   the extent of that value becomes relevant to the question of remedies, including damages.

19   Viewing the source code in its entirety, how it has changed over time and the specific way, if at

20   all, the excerpts were used is essential to determining how one might apportion any benefit

21

22

---

23   (Footnote continued from previous page.)

24   economic advantage over others." *See id.* at 564-65. Further, for particular portions of source
     code to possess value, the advantages of using the specific routines must outweigh its
     disadvantages and the net advantage must be substantial. *Id.* at 567.

25

26   [4] CZM has not argued that producing all versions of its commercial code would be
     burdensome, and indeed, it would not be. CZM has already produced a forensic computer image
     containing the contents of three computer hard drives and appears to maintain versions of its
27   software in a source code repository, which can be easily imaged and produced.

28

1    Optovue may have received from its use of that information and the realistic harm that CZM may

2    have suffered as a result.

3        In sum, absent access to CZM's commercial code, Optovue will be left to guess about

4    CZM's perceived value of the source code excerpts and any corresponding damage exposure.

5    Given CZM's claim that these particular excerpts were somehow sufficient to catapult Optovue

6    ahead of the competition for OCT technology, allowing Optovue in this litigation to explore just

7    how valuable this information was to CZM and, indeed, whether it has been used, is essential.

8        **IV.    CONCLUSION**

9        CZM cannot identify only the information it considers "relevant" to its trade secret claims,

10    without allowing Optovue to explore the entire context for those claims, including how CZM uses

11    its trade secrets and any value reflected by their use (or lack of value reflected by their non-use).

12    Without this information, Optovue's ability to defend against CZM's claims is severely impaired.

13    For these reasons, the Court should order CZM to produce all the requested laboratory notebooks

14    as well as its commercial OCT source code.

15

16    Dated:  July 31, 2008            JAMES POOLEY
                                       SCOTT OLIVER
17                                     DIANA LUO
                                       KATHERINE NOLAN-STEVAUX
18
                                       MORRISON & FOERSTER LLP
19

20
                                       By:   /s/ Diana Luo
21                                           DIANA LUO
                                             DLuo@mofo.com
22
                                       Attorneys for Plaintiff
23                                     OPTOVUE CORPORATION and
                                       Counterdefendants OPTOVUE
24                                     CORPORATION, INC.; JAY WEI
                                       and YONGHUA ZHAO
25

26

27

28