**Lontayao, Loraine**

**Subject:** FW: Optovue v. CZMI: Discovery Issues

**From:** Nolan-Stevaux, Katherine [mailto:KNolanStevaux@mofo.com]
**Sent:** Wednesday, July 30, 2008 3:19 PM
**To:** Adrian, Erin
**Cc:** MPetersen@fbm.com; Van Voorhis, Kimberly N.; Schopf, Gregory; Bartels, Donald; Rubenstein, Gregg; Copeland, Bruce
**Subject:** RE: Optovue v. CZMI: Discovery Issues

Erin,

Thanks for your email. I will just briefly touch on a couple of points for now.

We continue to disagree on the relevance of CZM's commercial code. However, if CZM will stipulate that none of that code contains any information, either directly or derived, from the code that Dr. Zhao wrote, we will not continue to press for CZM's complete commercial OCT code from 2001 to the present. Please inform us by tomorrow at 10 am whether or not CZM is prepared to make such a stipulation.

As for the motion to compel, while Optovue appreciates that the mediation is continuing, we do not believe that the mediation is the proper forum to address these discovery issues. It is clear that both parties are moving forward in good faith with the mediation talks and it is certainly not our intention to disrupt that process by filing a motion. That said, because we have just a limited time left for fact discovery, we have little choice but to keep this process moving as well.

Best,
Katie


**Katherine Nolan-Stevaux**
**MORRISON | FOERSTER**
755 Page Mill Road | Palo Alto, California 94304
T: 650-813-5822 | F: 650-494-0792
knolanstevaux@mofo.com | www.mofo.com

---

**From:** Adrian, Erin [mailto:eadrian@nixonpeabody.com]
**Sent:** Wednesday, July 30, 2008 1:57 PM
**To:** Nolan-Stevaux, Katherine
**Cc:** MPetersen@fbm.com; Van Voorhis, Kimberly N.; Schopf, Gregory; Bartels, Donald; Rubenstein, Gregg; Copeland, Bruce
**Subject:** Optovue v. CZMI: Discovery Issues

Katie,

We have not completed our review of the discovery we discussed on Monday, but I wanted to get back to you on the more pressing points specifically related to the motion to compel Optovue has threatened to file tomorrow.

1)   CZMI Source Code

First, with respect to the source code, we still disagree that CZMI's complete OCT source code is necessary or even relevant to Optovue's case. Optovue has no colorable argument that CZMI has stolen its trade secrets. At most, Optovue has asserted the totally non-credible trade secret theft argument that somehow CZMI obtained access to the source code because it was on the CZMI machine that Dr. Huang had been testing. This claim is completely without support and is not sufficient to entitle Optovue to CZMI's complete source code.

Optovue's claim that it needs to review all of CZMI's source code to determine the value that CZMI places on Zhao's source code is also unavailing. As we understand Optovue's theory, if the code is not found in CZMI's production devices, the code cannot be of much value. However, it is not unusual to abandon the research lab's versions of source code in production devices because such code is created, oftentimes by scientists, to make sure the prototypes being designed work according to their intended function. Software engineers later in the development cycle of such products refine and polish the device's functionality (via

improvements/revisions to the source code) to make the devices more user friendly/sellable. It would therefore be no surprise if CZMI's production source code contained little, if any, of Zhao's code. But, so what? By stealing CZMI's research code, Optovue got to market a number of months sooner than it otherwise would have. This is the value of the stolen CZMI source code. This value exists even if none of the research code is found in the later CZMI production device.

The CZMI source code has little, if any, probative value here, and any benefit from access to the code is clearly outweighed by the burden of producing the source code, and the risk of inadvertent disclosure of key technologies and innovations embedded in CZMI's products.

2)   Lab Notebooks

The information in the requested lab notebooks is highly confidential to CZMI, and so production of this sensitive information should only be required for a compelling reason. Optovue's rationales for obtaining the complete lab notebooks are not compelling.

CZMI has asserted that some of the information found on specified pages in certain lab notebooks has been stolen. The rest is therefore irrelevant. Optovue's argument that the surrounding pages will help to determine the value of the information on the pages CZMI has already produced is not rational. If pages other than those already produced would demonstrate that the value of the information is high, it would be in CZMI's best interests to turn them over. This argument does not support Optovue's claim that it has the right to discover the complete lab notebooks.

Similarly, the lab notebooks would not be helpful in uncovering whether the alleged trade secret information was generally known. Scientists typically do not waste time putting information that is generally known into lab notebooks. If Optovue is looking for evidence that the material on the pages was generally known, more targeted discovering requests focusing that issue are appropriate. The disclosure of complete lab notebooks of questionable relevance, however, is not.

Although you seemed reluctant to accept this offer on the phone, we renew our offer to produce five pages on either side of those already produced. If a review of these pages indicates that additional pages would yield relevant information, we would be happy to discuss further production at that time.

3)   Outstanding Discovery from Optovue

Turning to Optovue's rolling production, you have stated the Optovue intends to produce documents later this week. We have outstanding requests for which we have received no responsive documents, including documents evidencing the development of the RTVue source code (including log books, e-mail communications, notes, and the like), and promotional materials used to raise funding for Optovue. Of course, the outstanding requests are by no means limited to these examples, but these examples are immediately important, as we require responsive documents in order to move forward with depositions. We must insist that these materials be produced immediately so we can proceed with depositions.

Although I have not yet thoroughly reviewed your letter of this morning, I did notice that you stated that you confirmed during our call that Optovue and Jay Wei would not be producing documents relating to materials used to obtain funding for Optovue. I recall discussing with you why these materials are critical to CZMI, specifically because Optovue would have to describe the state of development of its technology in any materials provided to potential investors, which would be indicative of whether Optovue started the development of its technology from scratch, or had a head start by virtue of its use of CZMI trade secrets. My understanding was that you were going to take the issue back to your team and get back to me. Please advise if the statement in your letter is Optovue's response after consideration of the issues we discussed during our phone call. If not, we request that you take the issue back to your team. These materials are highly relevant, and we require these documents for the anticipated depositions.

***

Finally, it is our strong belief that that any unresolved disputes should be discussed and an attempt made to resolve them with the assistance of the mediator before any motions are filed. The mediation of the matter is continuing, and there is a mechanism in place -- the neutral expert process -- that the parties and mediator have designed to address source code issues. This will take place by August 18 pursuant to the agreement of the parties and mediator. Moreover, the mediator has been informed of these disputes, has been copied on communications relating to discovery disputes, and is willing to assist in an attempt to resolve them as well as the entire case. Please let me know if Optovue still intends to move forward with its motion tomorrow.

Thanks,
Erin

**Erin M. Adrian**
**Associate**

7/31/2008

**NIXON PEABODY** LLP
ATTORNEYS AT LAW

One Embarcadero Center
18th Floor
San Francisco, CA 94111-3600
P (415) 984-8231
F (866) 451-0186
eadrian@nixonpeabody.com
www.nixonpeabody.com


legally green℠ Please consider the environment before printing this email.

The preceding e-mail message contains information that is confidential and may be protected by the attorney/client or other applicable privileges. The information is intended to be conveyed only to the designated recipient(s) of the message. If you believe that you are not an intended recipient of this message, please notify the sender at (415) 984-8231. Unauthorized use, dissemination, distribution or reproduction of this message by other than the intended recipient is strictly prohibited and may be unlawful.

================================================================================

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230.html

================================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.
================================================================================